UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NJABULO BULLE,

    Plaintiff,

v.                                                Case No: 8:21-cv-26-CEH-CPT

NATIONAL FIRE AND MARINE
INSURANCE COMPANY,

    Defendant.
_____/

**ORDER**

    In this declaratory judgment action, Plaintiff Njabulo Bulle ("Plaintiff" or "Bulle") sues Defendant National Fire and Marine Insurance Company ("Defendant" or "National Fire") seeking a declaration that he is entitled to a defense and indemnity under the policy of insurance issued by National Fire to Baywatch Water Sports, Inc. for two underlying personal injury lawsuits. Now before the Court are Plaintiff's Motion for Summary Judgment (Doc. 18), National Fire's response in opposition (Doc. 22), Defendant's Motion for Final Summary Judgment (Doc. 21), Plaintiff's response in opposition (Doc. 23), Defendant's reply (Doc. 24), and the Stipulation of Agreed Material Facts (Doc. 28). The Court, having considered the motions, the responses, the parties' stipulated facts, and being fully advised in the premises will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment and enter declaratory judgment in favor of National Fire.

I.  **BACKGROUND**[1]

　A.  **Factual and Procedural Background**

The material facts are undisputed. On or about April 21, 2018, Baywatch Water Sports, Inc. ("Baywatch") was a company in the business of renting personal watercrafts (also known as "jet skis") to the public for use in the waterways near the Courtney Campbell Causeway in Tampa, Florida. Doc. 28 ¶ 1. On April 21, 2018, a personal watercraft with a vehicle identification number of YAMA2018E313 (the "Watercraft") was rented by Bulle from Baywatch. Doc. 28 ¶ 2. At the time of the execution of the rental agreement, Plaintiff signed a "Release, Waiver & Indemnity Agreement" ("Release"), in which Bulle agreed, among other things, to indemnify and hold harmless National Fire from all claims and attorney's fees that may arise from the rental of the Watercraft. *Id.* ¶ 2; *see also* Doc. 18-1. On April 21, 2018, after signing the Release, Bulle operated the Watercraft in the waterway near the Courtney Campbell Causeway, where he collided with another personal watercraft operated by Kiarrash Amrooei ("Amrooei"). Doc. 28 ¶ 3. At the time of the collision, Jennifer Lopez ("Lopez") was a passenger on Amrooei's watercraft. *Id.* Lopez and Amrooei claimed they sustained bodily injuries as a result of the collision. *Id.*

At the time of the collision, National Fire insured Baywatch under a commercial general liability policy, policy number 72 LPS 02 92 08. Doc. 28 ¶ 4; *see*

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the parties' Stipulation of Agreed Material Facts (Doc. 28). For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

2

*also* Doc. 1-1 at 11–74. The named insured on the policy, as designated on the Declarations page, is "Baywatch Water Sports, Inc." Doc. 28 ¶ 4. The policy provides liability coverage with a combined (bodily injury and property damage) single policy limit of one million dollars each occurrence, subject to a policy general aggregate limit of one million dollars. *Id.* ¶ 5. "Coverage A – Bodily Injury and Property Damage Liability" (Section I) of the policy applies to sums that the insured becomes legally obligated to pay as damages "because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* The policy included a Boats Schedule form, M-5349 (10/2008), and a commercial general liability form, CG 00 01 04 13. *Id.* The Watercraft involved in the subject jet ski collision (YAMA2018E313) was listed on the Boats Schedule, policy form M-5349 (10/2008), pursuant to an endorsement, effective December 15, 2017. *Id.*; *see* Doc. 1-1 at 17.

On June 25, 2019, Lopez filed suit against Baywatch and Bulle, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. Doc. 28 ¶ 6; Doc. 1-1 at 75–83. In her complaint, Lopez alleges that Baywatch was negligent in entrusting the Watercraft to Bulle, that Baywatch did not provide proper pre-ride instructions to Bulle, and that Bulle negligently operated the watercraft. Doc. 28 ¶ 6. Lopez seeks compensatory damages, attorney's fees, and costs against Bulle and Baywatch. *Id.*

On June 25, 2019, Amrooei filed suit against Baywatch and Bulle, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. Doc. 28 ¶ 7; Doc. 1-1 at 84–92. In his complaint, Amrooei alleges that Baywatch was

negligent in entrusting the Watercraft to Bulle, that Baywatch did not provide proper pre-ride instructions to Bulle, and that Bulle negligently operated the Watercraft. Doc. 28 ¶ 7. Amrooei seeks compensatory damages, attorney's fees, and costs against Bulle and Baywatch. *Id.*

In the foregoing lawsuits filed by Amrooei and Lopez against Bulle and Baywatch (hereinafter "Underlying Lawsuits"), Amrooei and Lopez seek damages for "bodily injury" caused by an "occurrence," as those terms are defined in the policy. Doc. 28 ¶ 8. National Fire retained counsel to defend Baywatch in connection with the Underlying Lawsuits, pursuant to the liability coverage provisions of its policy. *Id.*

On or about February 26, 2020, counsel for Bulle demanded that National Fire defend and indemnify Bulle in connection with the Underlying Lawsuits. Doc. 28 ¶ 9; *see* Doc. 1-1 at 93–94. National Fire informed Bulle's counsel that Bulle is not an insured under the policy and that National Fire thus has no duty to defend or indemnify Bulle, under the terms of the policy, in connection with the Underlying Lawsuits. Doc. 28 ¶ 10.

On October 26, 2020, Bulle filed a Complaint for Declaratory Judgment against National Fire in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida. Doc. 1-1 at 1–10. In the two-count Complaint, Bulle alleges claims for declaratory relief and breach of contract seeking a defense and indemnity from National Fire for the Underlying Lawsuits. *Id.* On January 16, 2021, National Fire removed the action to federal court predicated on the Court's diversity jurisdiction. Doc. 1 at 2. On January 20, 2021, National Fire answered the declaratory

4

judgment complaint and denied that Bulle is entitled to a defense or indemnity under the policy of insurance it issued to Baywatch. Doc. 11. National Fire denied that Bulle was an insured or an intended third-party beneficiary under the policy. *Id.* ¶¶ 23, 29. Additionally, National Fire raises as an affirmative defense that Bulle's claims are barred by the terms of the Release signed by Bulle on April 21, 2018. *Id.* at 6.

### B.     The National Fire Insurance Policy

In the National Fire insurance policy, Section II labeled "WHO IS AN INSURED" sets forth a description of people and organizations who qualify as insureds under the policy for purposes of liability coverage. Doc. 28 ¶ 11. The language of Section II appears on a form approved by Insurance Services Offices, Inc. ("ISO"). (Commercial General Liability Coverage Form, Insurance Services Offices, Inc., 2012 CG 00 01 04 13, Doc. 1-1 at p. 56-71.) *Id.* The policy states, in pertinent part:

> SECTION II - WHO IS AN INSURED
>
> 1. If you are designated in the Declarations as:
>
> > \*\*\*\*
>
> > d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
>
> > \*\*\*\*
>
> 2. Each of the following is also an insured:
>
> > a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership,

>joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business....
>
> ****
>
>b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.
>
>c. Any person or organization having proper temporary custody of your property if you die, but only:
>>(1) With respect to liability arising out of the maintenance or use of that property, and
>>(2) Until your legal representative has been appointed.
>
>d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part....

Doc. 28 ¶ 11; Doc. 1-1 at 64–65.

Based on the foregoing language of Section II, at subsection 1.d, where, as in the present case, the named insured is a corporation, the corporation (Baywatch) is an insured, along with its "executive officers," "directors" (with respect to their duties as officers or directors), and "stockholders" (with respect to their liability as stockholders). Doc. 28 ¶ 12. Under Section II, at subsection 2.a, the following are also insureds under the policy: Baywatch's "volunteer workers" (while performing duties related to the conduct of Baywatch's business), and "employees" (other than "executive officers") for acts within the scope of their employment by Baywatch or while performing duties related to the conduct of Baywatch's business. *Id.* In addition, under subsection 2.b, the following is an insured: "Any person (other than your

'employee' or 'volunteer worker'), or any organization while acting as your real estate manager." Doc. 28 ¶ 12.

It is undisputed that Bulle, at the time of the accident, was a customer of Baywatch, and that he was not an "executive officer," "director," "stockholder," "employee," "volunteer worker," or "real estate manager" of Baywatch. Doc. 28 ¶ 13.

## II.   LEGAL STANDARD

### A.   Cross Motions for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

### B. Applicable Law

A federal court sitting in diversity must apply both the substantive law of the forum, as well as the conflict-of-law rules of the forum state. *LaFarge Corp. v. Travelers*

*Indemnity Co.*, 118 F.3d 1511, 1515 (11th Cir.1997). "Florida follows the rule of lex loci contractus – that is, Florida courts apply the law of the jurisdiction in which the contract was entered into." *State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1218 (11th Cir. 2011). "That rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006) (citing *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988)). The National Fire and Marine Insurance policy was issued to Baywatch in Florida. The parties provide no further evidence that the insurance contract was entered into in another jurisdiction. In their motions, both parties cite to and rely on Florida law for the interpretation of the policy and the determination of the issues before the court. Doc. 18 at 6; Doc. 21 at 8. The Court agrees that Florida law governs this dispute.

### III.  DISCUSSION

At the core of the dispute on the instant cross motions for summary judgment is whether Bulle is an insured under the National Fire policy. In moving for summary judgment, Bulle requests the Court declare that he is an insured under the National Fire policy issued to Baywatch, and that, as such, he is entitled to a defense and indemnification for the Underlying Lawsuits. Doc. 18. National Fire seeks summary judgment in its favor and requests the Court declare that it owes no duty to defend or indemnify Bulle against the claims asserted against him in the Underlying Lawsuits because Bulle does not qualify as an "insured" under the policy it issued to Baywatch.

9

Doc. 21. Additionally, National Fire argues that Bulle signed a release and waiver that precludes Bulle's claims against National Fire.

Under Florida law, a court may issue a declaratory judgment as to an insurer's duty to defend and duty to indemnify. *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 9 (Fla. 2004). An insurer's duty to defend arises when a complaint filed against an insured alleges facts within the scope of the policy's coverage. *Trizec Props., Inc. v. Biltmore Constr. Co.*, 767 F.2d 810, 811 (11th Cir. 1985) (citing *Tropical Park, Inc. v. U.S. Fid. & Guaranty Co.*, 357 So. 2d 253, 256 (Fla. 3rd DCA 1978)). In Florida, the insurer's duty to defend is based solely on the allegations in the complaint. *Lime Tree Village Cmty Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993). If the allegations in the complaint create potential coverage under the policy, this is sufficient to trigger the insurer's duty to defend. *Trizec Props.*, 767 F.2d at 812 (citing *Tropical Park*, 357 So.2d at 256). In contrast, an insurer's duty to indemnify in Florida is determined by analyzing the policy coverages in light of the actual facts of the underlying case. *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F.Supp.2d 1248, 1258 (M.D. Fla. 2002) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.* 720 So. 2d 1072, 1077 n.3 (Fla. 1998)).

Florida law provides that an insurer's duty to defend is separate and distinct from its duty to indemnify. *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997). The duty to defend an insured is broader than the duty to indemnify an insured. *Aetna Ins. Co. v. Borrell-Bigby Elec. Co., Inc.*, 541

So. 2d 139, 141 (Fla. 2d DCA 1989). If there is no duty to defend, there is no duty to indemnify. *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009).

In relevant part, the National Fire policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

Doc. 1-1 at 56.

### A.  Duty to Defend

The duty to defend is determined by the allegations of the complaints in the Underlying Lawsuits. The parties agree the complaints seek damages for "bodily injury" caused by an "occurrence," as those terms are defined in the policy. Doc. 28 ¶ 8. Thus, the duty to defend is triggered if Bulle is an insured under the National Fire policy. *See* Doc. 1-1 at 56. The interpretation of an insurance policy is a question of law reviewed *de novo*. *Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So. 3d 273, 276 (Fla. 2017) (citation omitted). As an insurance policy is a contract, "contract principles apply to its interpretation." *Am. Strategic Ins. Co. v. Lucas-Solomon*, 927 So. 2d 184, 186 (Fla. 2d DCA 2006) (citation omitted). In Florida, "[t]he intention of the parties . . . must be determined from an examination of the entire contract and not from separate phrases or paragraphs." *Specialized Mach. Transp., Inc. v. Westphal*, 872 So. 2d 424, 426 (Fla. 5th DCA 2004) (citing *Lalow v. Codomo*, 101 So. 2d 390 (Fla. 1958)). As a basic premise in this analysis, clear and unambiguous policy terms should

be given their plain, ordinary and generally accepted meaning. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528 (Fla. 2005); *Union American Ins. Co. v. Maynard*, 752 So.2d 1266 (Fla. 4th DCA 2000). However, in applying the "plain meaning" rule, courts must not construe insurance policy provisions in isolation, but instead should read all terms in light of the policy as a whole, with every provision given its full meaning and operative effect. *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29 (Fla. 2000); *First Professionals Ins. Co. v. McKinney*, 973 So.2d 510 (Fla. 1st DCA 2007). Viewing the policy as a whole and in a light favorable to Plaintiff, Bulle is not an insured under the National Fire policy as discussed below.

### B. Interpretation of the National Fire Policy

The policy language at issue here is subsection 2.b's definition of "insured" as including:

> Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

Doc. 28 ¶ 12; Doc. 1-1 at 65. In his motion, Bulle argues that this provision makes him an insured under the policy. Specifically, Bulle submits that the use of the comma before "or" in the above sentence separates the sentence into two distinct groups, or at the least makes the provision ambiguous. Applying this grammatical syntax, an insured under the policy is: (1) any person other than Baywatch's employee or volunteer, or (2) any organization while acting as Baywatch's real estate agent. While there is grammatical support for this interpretation, such interpretation is unreasonable as a matter of law and does not render the policy ambiguous. It is unreasonable to

expect Baywatch to obtain an insurance policy that provides coverage "for any person" in the world "other than Baywatch's employee or volunteer."

"A provision is ambiguous if it is susceptible to two *reasonable* interpretations, one providing coverage and the other excluding coverage. . . . The ambiguity must be genuine." *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) (internal citations and quotation marks omitted) (emphasis added). The policy at issue here is not ambiguous. It is not a reasonable interpretation to expect the National Fire policy to provide coverage to *any person* that is not Baywatch's employee or volunteer. Such interpretation is illogical. If anything, the persons or entities that Baywatch would obtain insurance coverage for would include its employees and volunteer workers, not exclude them from coverage versus the rest of the world.

Recognizing that this interpretation is untenable, Bulle argues that this provision can be contextually understood to extend coverage to "any person other than individuals who are your employer or volunteer worker, *who is operating any of the listed watercrafts, such as Bulle*." Doc. 18 at 9 (emphasis added). First, Bulle offers no legal authority to support the Court adding language to a policy to clarify a perceived ambiguity and to create coverage. Second, Bulle's proposed added language still results in an unreasonable interpretation because the added language excludes Baywatch's employees and volunteers from being insureds under the policy while operating the listed watercraft, which directly conflicts with the policy language in the immediately preceding paragraph 2.a, which provides:

2. Each of the following is also an insured:

13

> a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business....

Doc. 1-1 at 65. Baywatch is in the business of renting jet skis. Operating Baywatch's jet skis is a duty related to the conduct of Baywatch's business. Thus, adding the proposed language "who is operating any of the listed watercrafts" to section 2.b. would create a direct conflict between provisions 2.a. and 2.b as the first section includes as insureds Baywatch's employees and volunteers while performing duties related to Baywatch's business whereas the latter provision would exclude from being insureds Baywatch's employees and volunteers while performing duties related to Baywatch's business, *i.e.*, while operating any listed watercraft. Thus, Bulle's proposed added language would create an ambiguity in the policy, not clarify it.

While Bulle is correct that ambiguities in an insurance contract are to be construed against the insurer, no ambiguity exists here. Cases interpreting the language of 2.b. have extended "insured" status to any person or organization acting as the insured's real estate manager. *See, e.g., Tudor Ins. Co. v. Am. Cas. Co. of Reading,* No. 3:15CV166/MCR/CJK, 2015 WL 12570897, at *1 (N.D. Fla. Dec. 8, 2015) (noting that apartment complex manager Strategic Management Partners, LLC was an "insured" under Tudor policy insuring "[a]ny person (other than your 'employee' or 'volunteer worker'), or any organization while acting as your real estate manager"); *RLI Ins. Co. v. Westfield*, No. 1:17-CV-491, 2018 WL 2844101, at *3 (S.D. Ohio June 11, 2018) (citing to the same language of 2.b. and finding, as required by the Property

14

Management Agreement, "real estate manager" is an insured under subject policy); *Cambria v. Two JFK BLVD., LLC*, 423 N.J. Super. 499, 502 (N.J. App. Div. 2012) (holding that the phrase "[a]ny person (other than your employee), or any organization while acting as your real estate manager" extends coverage to a person or organization acting as the named insured's real estate manager); *United States Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, No. 95-5861, 1996 WL 744900 * 4 (E.D. Pa. Dec. 27, 1996) (holding that the phrase "[a]ny person (other than your employee), or any organization while acting as your real estate manager" extends coverage to a person or organization acting as the named insured's real estate manager). Bulle has offered no authority for the proposition that supports his strained interpretation.[2]

Couch on Insurance explains:

> Although the construction of a policy according to strict rules of grammar does not prevail over the intent of the parties as shown by the whole instrument, some consideration is given such rules in construction. . . . The punctuation marks inserted in an insurance policy may be resorted to as an aid in construction when they throw light on the true meaning of the language used and the intent of the parties. Ordinarily, however, the reasonable intent governs, regardless of strict rules of grammatical accuracy

---

[2] In reviewing other cases citing this precise language, no party has argued nor court suggested that, given the comma placement, the policy language gives rise to coverage "for any person" in the world other than the named insured's employee or volunteer worker. *See, e.g.*, *Lendlease (US) Constr. Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 4:19-CV-00959-JD, 2021 WL 4226163, at *4 (D.S.C. June 14, 2021) (finding Lendlease is not an Insured under the Policy); *Home Depot U.S.A., Inc. v. U.S. Fid. & Guar. Co.*, No. 08-2713 SC, 2009 WL 981321, at *10 (N.D. Cal. Apr. 13, 2009) (finding Home Depot is not an insured under the USF & G policy).

15

>    in the language used, or of punctuation. Punctuation is always subordinate to the text and is never allowed to control the plain meaning thereof as indicated by the words and their relation to each other considered as a whole. The absence of punctuation is not material where the meaning of the policy can be determined without it.

2 Couch on Ins. § 22:5 (3d ed.).

Considered in the context of the policy as a whole, the plain meaning of section 2.b. is to extend insured status to any person or organization acting as the insured's real estate manager, except for the insured's employees and volunteer workers while acting as a real estate manager. The comma before the "or" cannot control the meaning of the paragraph to reach an absurd result that provides coverage to any person in the world. And Bulle fails to cite to any legal authority supporting the proposed added language, and the language would render the policy ambiguous in any event. Bulle is not an insured under paragraph 2.b. of the National Fire policy, and Bulle does not argue any other provision under the policy that would extend him insured status. Thus, National Fire does not owe Bulle a duty to defend under the policy National Fire issued to Baywatch.

### C.    Duty to Indemnify

National Fire recently indicated that the *Lopez* case has been resolved but that the *Amrooei* case is still pending. Doc. 31 at 10. Generally, a declaration as to the duty to indemnify is premature, "unless there has been a resolution of the underlying claim." *Northland Cass. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001); *see Fidelity Nat'l Prop. & Cas. Co. v. Boardwalk Condo. Ass'n, Inc.*, No. 3:07-cv-278-MCR-

EMT, 2010 WL 1911159, at *7 (N.D. Fla. May 12, 2010) ("[T]he duty to indemnify is not ripe for adjudication in a declaratory judgment action until there is a factual determination that the insured is liable in the underlying suit."). However, the duty to indemnify cannot exist without the duty to defend. Because the Court concludes above that Bulle was not an insured under the National Fire policy and thus National Fire owes no duty to defend Bulle, it follows that National Fire has no duty to indemnify Bulle. "[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend." *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009). There exists no dispute in fact that National Fire does not owe Bulle a duty to indemnify him for the claims asserted against him in the Underlying Lawsuits.

### D. The Release

National Fire alternatively argues that the Release signed by Bulle establishes that he cannot bring a claim against it. Bulle submits the issue of the release is beyond the scope of this declaratory judgment action. The Release is a contractual relationship between Bulle and Baywatch and is irrelevant to the issue of whether Bulle is an insured under the National Fire policy.

The Release contains language related to Bulle agreeing to release, indemnify and hold harmless "Bay Watch Watersports, Inc." and its insurers, among others. However, given the Court's conclusion above that Bulle is not an insured under the policy, the Court need not reach the issue of the Release. In this declaratory judgment insurance dispute, the parties are seeking a declaration as to the parties' respective

rights and responsibilities under the subject policy of insurance. The existence of a release and the interpretation or application of same has no bearing on the issue of whether National Fire owes Bulle a duty to defend and indemnify under the terms of the policy or whether Bulle is an insured under the National Fire policy. The applicability of the Release contained within the rental agreement has been raised in the Underlying Lawsuits as an affirmative defense. *See* Doc. 18-2. Thus, the Court makes no determination regarding the applicability or enforceability of the Release in this declaratory judgment action. Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

1. Plaintiff's Motion for Summary Judgment (Doc. 18) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED**.

3. As a matter of law, Defendant National Fire and Marine Insurance Company has no duty to defend or indemnify Plaintiff Njabullo Bulle for the Underlying Lawsuits under the policy of insurance National Fire issued to Baywatch.

4. The Clerk is directed to terminate all pending motions and deadlines. A Declaratory Judgment will be entered by separate Order of the Court.

**DONE AND ORDERED** in Tampa, Florida on January 18, 2023.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record and Unrepresented Parties, if any